HENRY E. PRENTISS *versus* AMOS M. ROBERTS.

In an action involving the conditions of a permit to cut logs on land of the plaintiff, where the testimony of the parties to the permit is conflicting, it is not competent to introduce evidence of the previous course of business between the same parties, or of the conditions contained in former permits. CUTTING, J., *dissenting*.

In an action to recover for stumpage for logs cut under a verbal license from one tenant in common to his co-tenant, brought against the assignee of the latter, the question at issue being whether a lien on the lumber was reserved, accounts stated and rendered to each other by the co-tenants are properly excluded, unless the plaintiff will consent to open the whole question of the state of the accounts between the parties.

Where the plaintiff has introduced evidence to prove declarations of the defendant unfavorable to the character of one of the witnesses for the defence, as to truth and veracity, this is, in effect, an impeachment of the witness's character, and the defendant may be admitted to testify that the character of the witness for truth and veracity is good.

When land and the timber on it are owned in common and undivided by two parties, and one has cut a part of the timber under an alleged license, the burden of proof is on him to show, not only that he had a license, but that it was unconditional, and not limited by the reservation of a lien on the lumber.

Instructions to the jury, that, after he has proved that he had a license to cut the timber, the burden is on the other party to show that it was conditional, and a lien reserved, are erroneous.

TROVER for an undivided half of certain logs owned in common by the plaintiff and Daniel Lord, and alleged to have been wholly converted by the defendant, the vendee of Lord.

On the trial, before APPLETON, J., the plaintiff testified, that he and Lord had owned timber lands together for several years, and had granted permits, signed by both of them, to cut logs thereon; he could not say whether Lord had ever given permits without the plaintiff's signature. In 1856, he and Lord agreed to grant permits at a certain price per thousand, or that Lord should have a permit if he desired to operate himself; Lord agreed to take a permit, if he operated; afterwards the plaintiff consented that Lord should commence, and take a permit when he came to Bangor, with the distinct understanding that what was cut before the permit should " be on the same terms and conditions contained in their usual form of permits, that is, the lumber to remain the property of the plaintiff until the stumpage should be paid," &c., to which, Lord assented. Subsequently, the plaintiff found that Lord and the defendant were operating on the land, and, in June, 1857, after the logs they had cut had been sawed, the plaintiff called on the defendant for the stumpage; the defendant said he would see Lord, and if it was right he would pay it. In July, the plaintiff saw him again, when he refused to pay the stumpage, and has not paid it.

Daniel Lord, called by the defendant, testified, amongst other things, that he made most of the bargains as to permits to cut lumber, signed sometimes both names to permits, by the plaintiff's authority, and had sometimes blank permits signed by the plaintiff; cut timber himself on their lands from time to time; always made a bargain beforehand, but never but once took a written permit. In the fall of 1856, witness agreed with the plaintiff to cut at an agreed

price for stumpage; "nothing was said about a lien, or any form of permit, except that he was to cut in the manner provided in the form they had usually used, that is, to cut clean, prudently, and all such as would make No. 4 boards." Witness sold to the defendant part of the logs cut on the Prentiss and Lord land; gave the defendant no notice that there was any claim on the logs for stumpage; was not then aware that Prentiss claimed a lien for stumpage.

The defendant's counsel asked the witness whether Prentiss had reserved a lien in any verbal permission, to cut timber in former years; and, also, whether the plaintiff had ever before, in any operation, demanded a lien or other security from him for stumpage. To these questions, the plaintiff objected, but the Court overruled the objections. The witness answered both questions in the negative.

The defendant asked the witness what was the state of the accounts between him and the plaintiff at the time of the alleged permit, and the witness answered that, including the stumpage on the logs in question, the accounts were about square. The question and answer were given without objection, and thereupon the plaintiff objected to evidence showing the state of their accounts. The Court excluded the evidence, including the foregoing. The defendant offered to prove that Lord was not indebted to the plaintiff on account; but, on objection, the Court excluded it, but admitted evidence that the course of business between the plaintiff and Lord had been to adjust their stumpages in account between themselves. And the Court instructed the jury, at the instance of the plaintiff, that the state of accounts between the plaintiff and Lord had nothing to do with this case; but that they might consider, as bearing upon the question at issue touching the alleged reservation of a lien in this case, whether the plaintiff and Lord had practiced settling their stumpages in account without reserving a lien.

On cross-examination, the same witness, the defendant objecting, testified that he and Prentiss had rendered ac-

counts to each other, containing debit and credit, as they respectively claimed, and identified the accounts as then shown to him. The plaintiff offered these accounts in evidence to show that a balance was due from Lord to him on old account. The Court offered to admit these, if the plaintiff wished to open the whole question as to the state of the accounts between them.. The plaintiff not consenting, they were excluded. The Court permitted the parties to show that there were accounts, but not how they stood.

The plaintiff introduced evidence of declarations made by the defendant as to Lord's character for truth. ` The defendant's counsel then asked the defendant what was Lord's general character for truth and veracity. The plaintiff objected, but the objection was overruled, and the defendant answered that it was good. The plaintiff introduced no testimony impeaching Lord's character, except as before stated.

The plaintiff asked the Court to instruct the jury, that the plaintiff, owning one half of the land, owned one half of the logs, unless they were satisfied that he had released his title to them by granting Lord permission to cut without reserving a lien for stumpage; that such permit to cut without a lien must be assented to by the plaintiff to be effectual; and the burden of proof was on the defendant to show such license.

This instruction the Court did not give, but instructed the jury, that, it appearing by the evidence of both parties that the plaintiff and Lord were tenants in common, and that the logs were cut under license, it was for the plaintiff to show that a lien was reserved, and that it was agreed, either expressly or by their conduct and course of business, that the plaintiff should hold the logs for the stumpage; and that to make such agreement effectual, it must have received the assent of both the plaintiff and Lord.

The verdict was for the defendant, and the plaintiff excepted to the rulings, refusals and instructions of the Court, and also filed a motion for a new trial, on the ground that the verdict was against law and the evidence in the case.

The case was elaborately argued by *Prentiss*, *pro se*, and *A. W. Paine*, in support of the exceptions, and by *J. A. Peters*, for the defendant.

For the plaintiffs, it was contended, —

1. As the plaintiff is admitted to own the land, he owned the logs, and the burden is on the defendant, to make out his title to them against that of the plaintiff. *Brackett* v. *Hayden*, 15 Maine, 349; *Heath* v. *Williams*, 25 Maine, 209; *Maine Stage Co.* v. *Longley*, 14 Maine, 444; *Eaton* v. *Lynde*, 15 Mass., 242; *Ewell* v. *Gillis*, 14 Maine, 72; *Brown* v. *Ware*, 25 Maine, 411; 2 Greenl. on Ev., 539. Hence, the defendant should be held to prove that the permit to cut was unconditional, and not the plaintiff to show that a lien was reserved. The *onus* was placed by the Court on the wrong party.

2. The testimony, admitted to show the character and terms of former permits, should have been excluded. To this point, numerous authorities were cited.

3. The account rendered by Lord to Prentiss should have been admitted, as tending to impeach Lord as a witness.

4. The declarations of the defendant as to the credibility of Lord were properly introduced, and evidence of general good character for truth is admissible only when the general character of the witness is impeached. 1 Greenl. on Ev., § 461; 2 Phillips on Ev., 432, (Hill's ed.)

For the defendant it was argued, —

1. If a tenant in common cuts from the common premises, his co-tenant cannot have a lien on the timber cut. He has a remedy, but not by a lien. *Dickinson* v. *Williams*, 11 Cush., 258; *Moses* v. *Ross*, 41 Maine, 360; *Mumford* v. *McKay*, 8 Wend., 446; *Baker* v. *Wheeler*, 8 Wend., 505; *Calhoun* v. *Curtis*, 4 Met., 413; *Bradley* v. *Boynton*, 22 Maine, 287.

2. What the plaintiff testified as to his contract with Lord, was not his declaration or confession, to be taken in

whole, or not at all, but his testimony as a witness, which might be received in part and rejected in part.

3. The admission of the defendant's declarations as to Lord's character for truth was in effect an impeachment of his veracity. The question allowed to be put to defendant was not objectionable. 1 Greenl. Ev., § 461.

4. The evidence as to former permits was admissible to impeach the plaintiff's statements, to show the relations of the parties and the surrounding circumstances, and the probability or non-probability of the statements of the parties as witnesses. Such testimony is admissible, even in written contracts, where there are doubts. *Cummings* v. *Dennett*, 26 Maine, 397; *Folsom* v. *Ins. Co.*, 38 Maine, 414; *Emery* v. *Webster*, 42 Maine, 204. See also *Locke* v. *Brown*, 14 Maine, 108; *Thompson* v. *Harrington*, 12 Pick. 425; *Leach* v. *Perkins*, 17 Maine, 462.

5. The instruction as to the burden of proof was right. Both parties testify to a permit. But the plaintiff claims that there was a lien reserved. It is for him to prove it. To decide otherwise, would be to declare that when a man cuts on land of another, by permission, the presumption of law is that a lien is reserved. Suppose the parties could not be witnesses, and that permission is shown, by the conduct of the parties, recognizing the right to cut. Must the party cutting show that there was not a lien, or the other party that there was? Is not the burden on the plaintiff to prove his own case — his own allegations? His story is that he permitted with a lien; Lord's, that he permitted without a lien. Must not the affirmative be shown, rather than the negative?

The opinion of the Court was drawn up by

TENNEY, C. J. — The logs in question were cut on land owned by the plaintiff and Daniel Lord, in common and undivided, in equal moieties, and sold by the latter to the defendant, who appropriated them to his own use.

The testimony of the plaintiff, and of Lord, certainly, as

reported, tends to show, that the latter cut the logs, under a verbal agreement between them. The great question in controversy, at the trial, seems to have been, whether in this verbal agreement the plaintiff was to have a lien upon the logs to be cut by Lord, for his security for his part of the stumpage. The former asserts, in his testimony, that a lien was secured, which is denied by the latter, in the evidence given by him.

The plaintiff testified, that it was agreed that there was to be a written permit, but until the parties should be ready to execute it, Lord might commence the operation, and the first time he should come to Bangor, he would take the permit, and whatever he should cut before the permit, should be on the same terms and conditions which were contained in the plaintiff's usual form of permits ; that is, the lumber cut was all to remain his property till the stumpage should be paid, and the payment therefor was to be made when the major part of the lumber should arrive at Sunkhaze, Greenbush, or the boom.

According to the testimony of the witness Lord, called by the defendant, the plaintiff offered to let him have all for $2,50 per M. for pine, and $1,50 for spruce, if he, Lord, should wish to operate himself. Lord told him he would think of it and let him know. The next time Lord called upon the plaintiff, in about a week after the plaintiff's offer, December 1st, Lord told him he would take his part at that price, and he went on and made the operation. Nothing was said about the lien, nor about the form of the permit, except that he was to cut in the manner provided in the form of permits which they usually made use of, that is, he was to cut clean and prudent, and all such trees as would make No. 4 boards. Nothing was said about his credit,—no doubting of it. Nothing was said about security,—any security.

It is apparent that the question of fact, whether the agreement gave a lien upon the logs to the plaintiff, as his security for his stumpage or not, might be decisive of the ques-

.tion touching the defendant's liability, in this action. If there was no lien reserved, and Lord was permitted to cut the logs, his acts could in no sense be tortious. It is not denied by the plaintiff, that whatever the contract was, in relation to the lien, the logs to be cut, under the agreement, would be the property of Lord absolutely, or subject to the lien, for the stumpage only, as the ground taken by one party and the other should be established, as a fact. The defendant succeeded to Lord's rights in the logs, and if there was no lien in favor of the plaintiff, it is very clear that there was no conversion by him.

The testimony of the plaintiff and Lord, being in conflict on the question, whether there was a lien or not, the exceptions are to the rulings, and to the instructions given to the jury, and to the withholding those requested by the plaintiff.

1. The witness Lord, having testified that, in previous years, the plaintiff had verbally permitted him to cut timber on lands owned by them, in common and undivided, was asked by the defendant's counsel whether the plaintiff had ever claimed a lien as security for his stumpage; and also, whether he had ever before, in any operation, demanded a lien or other security of him for the stumpage. These questions were allowed by the Judge to be answered, against the objection of the plaintiff, and they were answered in the negative.

2. The defendant offered evidence to show that the course of business between the plaintiff and Lord, had been to adjust their stumpages, in account between themselves, and the evidence was received against the plaintiff's objection. And the instructions to the jury, upon this point, directed them to consider, whether the course of business between them was not to settle their stumpages, in account, and whether such was not their mode of settling them, without the reservation of a lien by the plaintiff, as bearing upon the question before them, whether a lien was reserved for the plaintiff in this case or not.

The evidence so offered being in the case, and the Judge

having given instructions how far to consider it, the evidence and the instructions related to transactions between the plaintiff and Lord, wholly anterior to their agreement, under which the logs were cut that are now in controversy, and the question under this head and the one preceding, are somewhat similar; and they may be considered in connection.

If there was a contract between the plaintiff and Lord, relative to the cutting, and of this there seems to have been no question, nothing is presented in the evidence, which is all reported, tending to show, in the least degree, any connection between the contract in question, and those between the same parties, previously made and performed, touching the cutting of timber on the lands owned by them in common and undivided, by which any reference was made to those previous contracts as having any element incorporated into the one in dispute. One was entirely independent of the other, according to all the evidence in the case. It may certainly as well be presumed that both parties chose that the new contract should differ from the former ones, as otherwise. It nowhere appears that any controversy arose in the settlement, under the previous contracts; and, if the new contract was really similar thereto, the purpose that the parties could have for a statement of all the details is not apparent. The circumstances of one or both parties may have changed since the former were made, and, for various reasons, a change in the new one might be desirable. It is the undeniable right of the parties to the contract, to change it from those that preceded it, for good reasons, or for bad reasons, or from motives which are even capricious. One may be satisfied that a previous bargain was on his part improvident, and, to the whole extent thereof, ruinous to him; and, in a subsequent one, and upon the same subject matter, take care that it shall be essentially improved. And the question, in case of a dispute of what the bargain was, must be determined by proof of its provisions, and not by proof of another bargain. A different principle might result in

great injustice to one party or to the other. Such evidence, as bearing upon the issue, is, at best, uncertain, and liable essentially to mislead a jury. It is not uncommon that the parties to a verbal contract, and others who had knowledge thereof, may differ in their testimony of what it was. If the case is nicely balanced, it is not proper to disturb that balance, by showing what another contract was, which was independent, but the result is often attained, by invoking the principle, that the party on whom is the burden of proof shall be required to disturb that balance, if he would prevail. *Melior conditio defendentis est.*

The introduction of evidence, in relation to the statement of the accounts, under former proceedings of the parties, was to show how former contracts were treated, as having been made by the evidence of how they were settled. This was merely another species of evidence, tending to show what other and distinct contracts, made and cancelled, were, in order to throw light on the one in dispute.

It is sometimes the case that the *situation* of the parties, and the circumstances surrounding them, may throw light upon a question of dispute touching a contract; but we cannot think that, ordinarily, another agreement, independent, can be of this character, and the authorities relied upon by the counsel for the defendant are inapplicable to the case before us.

Many of the authorities cited for the plaintiff on this question are in point to maintain his position.

The introduction in practice of the defendant's principle, in cases where a dispute should arise as to what the facts really were, in a given case, would tend to substitute, for an express verbal contract, another of a different character, for the reason that the evidence of what the latter was should be conflicting; to establish one thing, to allow proof of a different thing. The language of the Court, in the case of *Robinson* v. *Fitchburg and Worcester Railroad Co.,* 7 Gray, 92, in a matter where an attempt was made to show carelessness in the defendant's engineer, by evidence of spe-

cific acts of carelessness in running the train, on other occasions than the one in question, was adjudged to be clearly incompetent, contains the principle applicable to the case before us; it is said, "it would not only lead to collateral inquiries, and so distract and mislead the jury from the true issue before them, but it had no legal or logical tendency to prove the point in issue. Because a man was careless, or negligent of his duty, in one or two specific instances, it does not follow that he was so at another time, and under different circumstances." It would be equally illogical for a jury to infer that the terms of one verbal contract are incorporated into, or excluded from another, entirely distinct, between the same parties, and upon the same subject matter, merely from proof of the former.

3. The plaintiff was not prejudiced that the accounts of himself and Lord, containing debt and credit, rendered to each other, were not admitted, as the exclusion was on the ground that he would not consent that the question on the state of the accounts should be opened. It is not easy to perceive any foundation for the introduction of these accounts, unless the whole matter involved in their mutual dealings could be fully disclosed by each party, so far as it should be pertinent.

4. The plaintiff was allowed, the defendant objecting, to show that the defendant, in speaking of Lord's ability to pay, said that "Lord was perfectly good, but he was a little slippery sometimes;" also, "that he could not rely at all upon what he told him, he could place no confidence in what he said." The defendant's attorney thereupon asked the defendant the question, "what is Lord's character for truth and veracity." To this question the plaintiff objected, for the reason that the plaintiff had not impeached Lord's general character for truth. The objection being overruled, the defendant answered, "that it was good, and he would believe him as soon as any body else." It cannot be denied, that these declarations were suited, if unexplained, to affect unfavorably the character of Lord for truth, in this case, be-

ing made by the party relying on his testimony, in support of the defence. Whether these declarations, testified as made by the defendant, were admissible, is not now a question before us, as their admission was in answer to questions put by the excepting party. It was competent to show that these declarations were not made, for this would contradict the witnesses, introduced to prove them. This was not done, and the question is, whether they could be explained, for the purpose of removing or mitigating their effect. Their introduction was, in effect, an impeachment of the character of the witness for truth. If other witnesses than the defendant had testified for the plaintiff, that they knew the character of Lord for truth, and that it was bad, and, on cross-examination, had named individuals, who had said, as it was in testimony that the defendant had done, it would be competent for the defendant to show, by these witnesses themselves, that they did not entertain such opinions as the declarations expressed; and we think the evidence of the defendant was equally admissible. When the plaintiff was allowed to introduce the declarations of the defendant, it is difficult to perceive why the legitimate effect should not be allowed to be counteracted by the evidence received.

5. The only remaining question relates to the instructions requested by the plaintiff, but refused, and those which were given. The remark of the Judge to the jury that, if either party was believed, the logs were cut under a license, is regarded by the plaintiff as exceptionable. The remark contained no rule of law; it was, at most, stating in unequivocal terms what the evidence was. The jury were not instructed that they must so treat it; they were at liberty to find how the fact was in that respect, though it would seem, if the language of the testimony of the plaintiff had given to it its ordinary and legitimate import, there could be little doubt of the correctness of the remark. The instruction in law, as requested, was, that the title of the undivided half of the land being in the plaintiff, the title to the logs, to the same extent, was in him also, unless the defend-

Prentiss *v.* Roberts.

ant satisfied the jury that the plaintiff had released the title, by granting Lord permission to cut without reserving a lien for the stumpage, or in some other way. The jury were instructed that the burden of proof was on the plaintiff that a lien was reserved, the license to cut being established, and that, in order to recover, the plaintiff must show that a lien was reserved. These instructions are based upon the fact that the jury should be satisfied that the logs were cut under a license.

If the simple authority was given by the plaintiff to Lord to cut and use the logs for his own benefit, and nothing else was contained in the agreement, the contract is like the common case of the sale and delivery of personal property. If such was the proof, the right of Lord was unqualified to the logs cut. It carried the right to cut and take the logs after they were cut. In the supposed state of the proof, the entire right of the plaintiff to the logs so cut, as it existed before the license, was overcome. If it were otherwise, the purchase and delivery of goods would give the vendee an imperfect title only, till he should prove that no condition, exception or reservation was annexed to the sale. Such a principle cannot be admitted.

What is the question here? It is whether the plaintiff gave an unqualified license to Lord to cut and take the logs, for his own benefit, for the price agreed. Suppose a person, having a perfect title to land on which timber trees are standing and growing. Another cuts the trees thereon and appropriates them to his own use. He claims to have had a license for a valuable consideration from the owner. The burden is on him to show such license, if denied. It is denied, and he, as a witness, testifies that he had such license. If the case stops there, and the testimony is believed, the license is established. But the owner of the land testifies that he gave no license. There is no change in the burden of proof. The issue is, whether a license was given or not. It is throughout on the party asserting the license, though the evidence may preponderate one way and the other, as

one party or the other introduces the evidence, and the one setting up the license cannot prevail, unless the proof is satisfactory that the license was given.

In this case, each party to the agreement had title to one undivided half of the land; each had the right to the same proportion of the trees then standing and growing thereon. Neither could have been divested by the other without his consent. The controversy relates to an undivided half of the trees, which belonged to the plaintiff. The title to them was in him, till, by evidence, it shall be proved that he has parted with it. This title throws the burden of proof upon the other side. What was the question? Was the plaintiff's right given up at all, and if so, to what extent? The burden was on the defendant in this. A part of this burden was disposed of by the plaintiff's testimony, but no further than that testimony extended. Lord testified that he had a license to cut for the consideration agreed, without any reservation for security of the stumpage. The plaintiff, testifying of the same agreement, and of the same time, said he gave the license to cut subject to a lien for the security of his part of the stumpage. This, if believed, would neutralize the testimony of Lord, as to the existence of the lien. The burden so far remains where it was. The fact that the plaintiff testified to, that he gave a license to Lord to cut the timber, subject to the lien, which, at the same time, he asserted, cannot change the burden of proof as to the lien. The license being so qualified, the reservation of the lien is asserted on the part of the one who had the title, and it is denied on the other. The title to the logs continues where it was till the jury shall be satisfied that it was relinquished unconditionally. To do this, the burden is on the defendant. The instructions were erroneous.

*Exceptions sustained, — verdict*
*set aside, and new trial granted.*

RICE, MAY, GOODENOW and DAVIS, JJ., concurred.

CUTTING, J.—I concur in the opinion as drawn by the Chief Justice, so far as it respects the instruction of the Judge at *Nisi Prius* as to the burden of proof, who assumed a fact to have been proved as isolated and independent of other elements intimately and inseparably connected.

The testimony of Prentiss was, in substance, that he gave a verbal permit reserving a lien for stumpage, which was contradicted by Lord, (a witness called by the defendant,) only as to the reservation of the lien. If the testimony of the former was believed, his suit was maintainable; otherwise, if full credit was given to that of the latter. But the instruction assumed Lord's evidence to be true, because, so far as it went, it was not contradicted by Prentiss. It also assumed that the testimony of Prentiss, in relation to the reservation of the lien, was independent of his admission of a verbal permit. It assumed one portion of his testimony to be true and the other portion false, and called upon him to prove, by testimony *aliunde*, that it was not so. According to the instruction, then, the jury were virtually told to believe Lord and disbelieve Prentiss, unless the latter, taking upon himself the burden, had satisfied them that the condition annexed to the permit was true. Whereas, upon the whole evidence, it should have been left to the jury to determine whose version of the contract was the true one, without an instruction as to the burden of proof changing from the one side to the other. Or, in other words, "it was for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him." 1 Greenl. Ev., § 201.

The foregoing are reasons, which, together with those advanced by the Chief Justice, induce me to concur in sustaining the exception to the instruction. But I do not concur in that part of the opinion which sustains the exceptions in the admission of certain testimony.

It appeared that Prentiss and Lord were directly opposed to each other in their testimony respecting the lien,—the

one swearing that it *was*, and the other that it *was not* reserved. That they were the owners, as tenants in common, of the land on which the lumber was cut, was not controverted. Now the question naturally arose, under such conflict of testimony, as to their *credibility*. Both had the same means of knowledge, for they were the only contracting parties. Under such circumstances, it would be very desirable to know how they had contracted in former years, in reference to reserving a lien, or otherwise; and, as such fact appeared, it would greatly tend to corroborate the one or the other. I think such an inquiry was legitimate, and the facts elicited might properly be considered by the jury in determining the credibility of witnesses so interested as to be admissible only by force of the statute. Much has heretofore been said by Judges, in their opinions, as to the influence of "surrounding circumstances." This question is well calculated to test their sincerity; and one of the surrounding circumstances is, unquestionably, the antecedent conduct of the parties in reference to the same subject matter. It forms no new issue, but discloses facts creating a probability, more or less strong, by which to judge of the character of subsequent from prior proceedings, and thereby to arrive at the truth, involved, as it was in this case, in doubt and mystery. The reasons advanced in the opinion against its admissibility might very properly be urged upon the jury in considering its effect. It was admitted, not for the purpose of making a new contract, but to show what the old one really was. I have heretofore used the term "credibility of witnesses," but not intended in the odious sense of an impeachment, for their characters as such were not attacked in the usual manner. I used the word credibility as a substitute for recollection, or misconstruction of the true nature of the contract.