# CHARLESTON.

BRIAR CREEK RAILWAY COMPANY *v.* THE KANAWHA CENTRAL RAILWAY COMPANY *et al.*

Submitted February 14, 1910.   Decided January 23, 1912.

1. EMINENT DOMAIN—*Constitutional Law—Waiver.*

   As the constitutional provision, inhibiting the taking of private property for public use without compensation, is a mere limitation upon the power of eminent domain, constituting no abridgment of the power of a citizen to dispose of his property or rights or interests therein by contract, the protection it affords from unlawful entries upon private lands by internal improvement companies may be waived by agreement or conduct creating an estoppel. (p. 230).

2. RAILROADS—*Injunction to Compel Operation.*

   If an owner of land permits a railroad company to build a railroad through his land, under an oral agreement for compensation, or, without protest and with full knowledge of the fact permits a railroad to be built on his land, he is limited to his remedy for compensation for the land, and cannot prevent the operation of the road by injunction nor compel removal thereof from the land. (p. 231).

3. SAME—*Possession of Right of Way.*

   A railroad company, claiming part of a common carrier railroad, built on private land as a private enterprise by the owners of adjacent lands, as successor in title to the owners of the land on which it was built and under a location made by it in the manner prescribed by law, against another railroad company, claiming that part of it under a location made by it, is not entitled to an injunction to prevent the latter from taking possession of the road and operating it, pending condemnation proceedings to determine the legal rights of the parties. (p. 232).

Appeal from Circuit Court, Kanawha County.

Bill by the Briar Creek Railway Company against the Kanawha Central Railway Company. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*Price, Smith, Spillman & Clay,* and *Linn & Byrne,* for appellant.

*Avis & Hardy,* for appellees.

POFFENBARGER, JUDGE:

In a contest between two railway companies for the same right of way, or rather a railroad already constructed, the appellant sought an injunction, to prevent the appellee from taking possession of the property and from operating the railroad, or running its engine and cars over the same; and the court below refused the injunction, sustained a demurrer to the bill and dismissed it without prejudice to the assertion of any rights the appellant may have in a court of law.

Following the general course of a stream known as Briar Creek, crossing it at several points and running partly on one side thereof and partly on the other, the right of way and railroad are at some places on the lands of the Emmons Tract Coal Company, a tract of about 5,000 acres and at others on lands owned by Thomas L. and others of the Broun family and D. G. Courtney, a tract of about 4,200 acres, the stream being the line between the two boundaries of land. It was built by the Emmons Tract Coal Company under some sort of a loose verbal arrangement, as a means of developing the natural resources of said two tracts of land, and operated as a common carrier by the Coal River and Western Railway Company and its successor the Coal River Railway Company. On this point, the bill says: "In the year 1904 and subsequent thereto, as plaintiff is informed and believes, certain negotiations were had between the said Brouns and Courtney on the one side, and the said Emmons Tract Coal Company on the other, for the construction of a railroad up and along Briar Creek from Brounland, as a means of developing the coal upon the properties belonging to said parties respectively; that pending said negotiations, a railroad track was

graded and constructed by or under the direction of the said Emmons Tract Coal Company, or someone connected with it, upon and along the said Briar Creek from its mouth at Broun-land for a distance of four miles, crossing and recrossing the said Briar Creek at various points and passing over and through the lands of the said Brouns and Courtney and of the said Emmons Tract Coal Company and small pieces belonging to other persons, substantially upon the same route as set forth on plaintiff's map and profile, hereinbefore mentioned. That the said railroad was built without any authority from and without the consent of the said Brouns and Courtney or either of them so far as it runs through their land, but that they took no steps to interfere with its building; believing as plaintiff is informed and believes that the negotiations aforesaid which were pending with reference to its construction with the Emmons Tract Coal Company, would be carried out satisfactorily to them, so that the railroad could be operated in such a way as to benefit their tract of land—giving them main line rates and other facilities which they were insisting upon in their said negotiations." Then follows this allegation: "After said railroad was built, the defendant, The Coal River & Western Railway Company, began to operate it by sending its cars and engines over said railroad and transporting freights and others articles along its line; that until very recently, neither the Emmons Tract Coal Company nor any other person by whom said railroad was constructed, so far as plaintiff is informed, claimed any right to the said railroad track and road-bed, or the right to operate the same, so far as it runs through the said Broun and Courtney land; but The Coal River & Western Railway Company, or its successor, The Coal River Railway Company was allowed to operate it as aforesaid, without interference from the land owners on either side." Shortly before the institution of this suit, the Kanawha Central Railway Company claiming the railway upon some ground not disclosed by the bill, notified the Coal River Railway Company to cease using the railroad, and itself took possession of the same, placing its engine and cars thereon and transporting freight and passengers, for compensation; and, on March 27, 1906, it instituted condemnation proceedings to obtain title to so much of the right of way as lies within the boundaries of

the Broun and Courtney lands. The bill, without indicating the basis of the claim of the Kanawha Central Railway Company to title to the railroad or right to use it, denies such right and yet sets up no claim of right in the plaintiff except title to the right of way by virtue of prior location thereof and conveyances from the Brouns and Courtney.

The latter obtained its charter January 6, 1906, and claims to have adopted a map and profile of a survey of its route, corresponding substantially with the location on which the railroad is already built, and filed them in the offices of the Secretary of State and the Clerk of the County Court of Kanawha County, January 9, 1906. On the following day, it purchased the right of way as so surveyed, through the Broun and Courtney lands, which was conveyed to it by deed, on March 21, 1906. It also commenced condemnation proceedings to acquire the right of way through the Emmons Tract company lands. The Kanawha Central Railway Company was chartered January 22, 1906, and filed its map and profile, covering the same right of way, February 5, 1906, and on the 27th day of March, 1906, commenced condemnation proceedings to acquire the right of way on which the road is located through the Broun and Courtney lands, as stated. According to the allegations of the bill, these were the conditions under which the Kanawha Central Railway Company took possession of the road and began to operate it.

The allegations of the bill, respecting the construction of the railroad in controversy, fairly construed, show acquiescence in the use of the land on which it is built for general raiload purposes. It was built by the Emmons Tract Company while negotiations, looking to the accomplishment of that end, were pending. Hence it is reasonable and fair to say it was built in reliance upon the negotiations, and upon belief in final consummation of an agreement. In other words, not doubting their ability to reach a satisfactory agreement with the Emmons Tract people, the Brouns and Courtney, by their silence and non-interference, permitted them to build the road, for use as a common carrier, a public railroad, the ultimate ownership, management and control of which were to be settled and determined by the pending negotiations. These having failed, the present contest for settlement or acquisition of title and control came on, in

the form of rival and contending corporations, prosecuting and defending actions in the legal forum, in which every question indicated by the bill can be determined, except that of possession of the railroad and right of way, including use and operation, pending disposition of the actions in the law court.

Thus the land and the fixtures, the rails and cross-ties, have been voluntarily devoted to a public use, subject to rights of compensation and title susceptible of complete vindication, for aught that appears here, by legal proceedings. Under this tacit agreement, the road was built and actually operated as a common carrier. As to the details of the negotiations, the bill is silent. Whether the Brouns and Courtney expected to have stock or interests in the road for the right of way, or to contribute ratably or in some proportion to the cost of construction, or whether they did so, is not disclosed; but we think there is a clear admission of acquiescence in the building of the road, founded upon expectation of both rights and duties, respecting the same as a public carrier, on the part of the Brouns and Courtney, to whose rights the Briar Creek Railway Company has succeeded.

Under these circumstances, that company, by its bill, invokes the constitutional provision inhibiting the taking of private property for public use without compensation, notwithstanding the offer of such compensation and intent to pay it, manifested by the commencement of the condemnation proceedings. But for acquiescence in the construction of the road and devotion of the land to public use, subject to the right of compensation, and possibly some interest in the railroad, the case would clearly fall within the protection of the organic provision referred to and the remedy by injunction. The constitutional guaranty was intended, however, for the protection of such persons only as see fit to retain possession and title to their property, until compensation therefor shall have been ascertained and paid. Those who voluntarily yield them to a railroad or other internal improvement company, or devote their land to public uses, necessarily waive and lose the benefit thereof. That provision does not abridge the right of a citizen to contract with his neighbor or an internal improvement company. It is only a limitation upon the sovereign power of eminent domain, provided and resorted to

for procurement of private property for public use, when the owner thereof declines to yield it voluntarily, either denying the right of appropriation to the use contemplated, or unable to agree upon the amount of compensation. If a land owner sees fit to permit an entry upon his land by a railroad company or an adjoining land owner, under some sort of an oral agreement, and large expenditures upon the faith of such agreement or permission, carrying an assurance of a conveyance of the title to the land or an easement therein, his situation is similar to that of a vendor by verbal contract, when the vendee has entered into possesson and made substantial improvements, or of a father who has orally given a son land and the latter has entered upon it and by his labor and out-lay of money made improvements of which it would be inequitable and unjust to deprive him. Nothing in either the terms or purpose of the provision invoked imports any intention to destroy or abridge the right of contract on the part of a land owner. On the contrary, all internal improvement companies as well as all municipal bodies are empowered, and the state and all individuals have inherent right, to purchase land, and the exercise of these contractual powers is contemplated in all those cases in which the law of eminent domain is available in case of necessity for the invocation thereof. The latter is supplementary to the contractual power through which most of the acquisitions of private property for public use are made. Logically, therefore, as held by numerous courts, if an owner of land puts a railroad company in possession of a right of way through it, or, without protest, sees a railroad company build its road on his land, he is estopped from asserting title to, or taking possession of, so much of it as is so used by the company. *Roberts* v. *Railroad Co.,* 158 U. S. 1; *Kakeldy* v. *Columbia R. Co.,* 80 Pac. Rep. 205; 33 Cyc. 155; 23 A. & E. Enc. L. 701; Elliott Railroads, sec.949.

Here the entry was made and the work done by the Emmons Tract Coal Company, whose charter may not have extended its corporate powers to the building and operation of a railroad. As to the extent of its powers the bill is silent, but this does not affect the application of the principle. It was permitted to enter upon the land and lay out thereon large sums of money in building the road and indirectly to operate the road as a public carrier,

and this bill shows an express desire that it shall continue to be such a carrier. This plaintiff, chartered as a railroad company and claiming to be one, has bought the right of way, stands in the shoes of the former owners, and claims right to possession of the road for the purpose of operating it as a common carrier. That contemplated agreement, whatever its terms were, was consummated and executed to the extent of the construction of the railroad and employment thereof in the public service. All that remained was the determination by agreement, if possible, of the ownership thereof or the interests and rights of the negotiating parties, respecting it. The effort to do this having failed, they have resorted to other methods, including condemnation proceedings in which their legal rights may be fully ascertained and declared. Under such conditions, we are clearly of the opinion that none of these proceedings should be aided or retarded, or the operation of the railroad interfered with, by injunction. There is no technical reason for it. Both the constitutional guaranty and the statute of frauds are eliminated by the conduct of the parties, amounting to an agreement *pro-tanto*. In this class of cases, nothing sustains the remedy by injunction but the arbitrary inhibition of the constitutional guaranty. Viewed as a mere trespass or unlawful entry, the wrong is remedial by the ordinary legal possessory actions. There is no element of irreparable injury. Hence, waiver of the constitutional guaranty destroys the sole ground of equity jurisdiction.

The decree complained of will be affirmed.

*Affirmed.*