# CHARLESTON.

COUNTY COURT OF WETZEL COUNTY v. BALTIMORE & OHIO RAILROAD CO.

Submitted January 25, 1916.   Decided February 1, 1916.

1. RAILROADS—*Appropriation of Highway—Construction of Substitute Road—Estoppel—Ouster.*

Acquiescence of a county court in the appropriation of one of its highways by a railroad company, without its consent, or acquisition of the right by condemnation, until after the railroad has been constructed and put in operation upon the location so taken, does not preclude right in the former to require the latter, by way of restoration of the public right, to construct a substitute road as nearly equal, as is practicable, in point of utility, to the road so taken and occupied; but the county court, in such case, has no right to oust the railroad company from its location on the site of the former road, notwithstanding the wrongfulness of the appropriation, since the railroad company has by law the superior right of location enforcible by proper procedure.   (p. 539).

2. SAME—*Appropriation of Highway—Improvement of Substitute Road—Acquiescence.*

Long acquiescence of a county court in the substitution by a rail-

road company of an inferior and insufficient road, for the one so taken, does not preclude its right to compel the railroad company so to improve the substitute road as to make it legally sufficient.   (p. 539).

3.  SAME—*Appropriation of Highway—Substitute Road—Maintenance.*
    Clause 6, sec. 50, ch. 54 of the Code, ser. sec. 2949, does not impose duty upon a railroad company, crossing or appropriating a public road, to make a better road than the one so crossed or appropriated, nor to maintain a sufficient substitute road after it has been constructed.   (p. 539).

4.  SAME—*Appropriation of Highway—Substitute Road—Barriers.*
    If, in the restoration of a public highway at a railroad crossing, or the substitution of a new road for one taken by a railroad company, the restored or substituted road is made narrow and built along the brink of a steep declivity, for any reason, so as to be dangerous, in view of the minor accidents incident to highway travel, provision of a guard or barrier along the side thereof next to the precipice is a part of the work of restoration or reconstruction.   (p. 544).

Appeal from Circuit Court, Wetzel County.

Suit by the County Court of Wetzel County against the Baltimore & Ohio Railroad Company.   From decree for plaintiff, defendant appeals.

<em>Modified and affirmed, and cause remanded.</em>

*Thos. P. Jacobs* and *F. V. Iams,* for appellant.

*Hall & Hall,* for appellee.

POFFENBARGER, JUDGE:

This appeal is from a decree requiring the Baltimore & Ohio Railroad Co., successor in title to the West Virginia Short Line Railroad Co., to relocate, rebuild and improve certain portions of the public road constructed about the year 1900, by the latter company, in lieu of a portion of a pre-existing public road, which, in building its line, it appropriated and occupied, and to improve another portion of the same road, which the Baltimore & Ohio Railroad Co., in the year 1911, had removed and rebuilt a second time, in order to make room for the establishment of a yard for the assembling of coal cars for shipment, consisting of six or seven sidetracks.

Neither the defendant nor its predecessor in title complied

77 W. Va.

with the statute providing for the taking or alteration of a highway, in the process of construction of a railroad. In such cases, it is the duty of the railroad company either to obtain the consent of the local authorities having control or jurisdiction of the road taken, or condemn the same under the provisions of sec. 48 of ch. 54 of the Code. Clause 6, sec. 50, ch. 54 of the Code, ser. sec. 2949. Disregarding the statute, the West Virginia Short Line Railroad Co., simply built its line of railroad on certain portions of the highway in question and made alterations therein, so as not wholly to cut off public travel. Later, the defendant railroad company, in the process of enlargment of its facilities at a certain point on the line, proceded in the same manner. Having purchased certain land adjoining the right of way, as it had been originally acquired, it graded a location for the sidetracks and put them in, and, in order to do so, relocated a portion of the road as it then found it, and as it had been built by its predecessor. Not having granted permsision to take the original road and assuming wrongfulness of the conduct of the two railroad companies in taking portions of it, the county court, according to its present contention, abstained from doing any work on the altered portion thereof, so as to be in position to deny its acceptance of the alteration made, which might have been regarded as an implied assent to the taking. On the other hand, the railroad company invokes the doctrine of estoppel, in view its long use of the old road, with knowledge and acquiescence of the county court. It also charges non-maintenance of the old road before it was appropriated. In this connection, it is said the alleged road had never been more than a trail. The proof is that it had always been neglected. It runs through a rough mountainous portion of Wetzel County and near the Harrison County line. The portion altered by the railroad companies followed the bank of a small stream, a tributary of Fishing Creek, almost to the head three-of, at which point the Short Line Railroad Co. established the western portal of a long tunnel under a ridge separating Wetzel County from Harrison County. There, the old road ascended the hill for some distance and turned south. The road, as reconstructed, follows the northen side of the rail-

road along the hill side and passes over the portal of the tunnel by a steep ascent.

While the character of the old road and the conduct of the county court respecting it are severely criticized in the brief, there is no denial either in argument or in the answer, that the road was a public highway. The criticism is interpreted as being argument in support of the contention that the road, as altered and rebuilt, though bad, is no worse than it formerly was.

The wrongful and unwarranted appropriation and occupancy of the road by the defendant and its predecessor in title constitute no ground of ouster of the railroad company from its present location, in accordance with the prayer of the amended bill, and the court properly sustained a demurrer thereto. The statute above referred to confers upon railroad companies right of location for their roads, superior to that of county courts for ordinary highways. If a county court refuses permission to cross or alter a highway, the railroad company may obtain the location it desires for its railroad track, by condemnation, but, in such case, it must restore the highway to its former condition, as nearly as may be, or construct another road in lieu thereof. In other words, the two railroad companies had the power and right, by proper procedure, to obtain the location they have taken. No doubt the county court could have restrained and prevented the occupancy thereof, until the right of occupancy should have been obtained by proper procedure, but it did not do so. For a period of about thirteen years, it permitted them to occupy the former location of one of its roads. To permit it now to oust the defendant from that location would be a subordination of substantial right to technical procedure. By its failure to interpose a timely objection to the occupancy, by proper procedure, the county court has waived its right to prevent it. It is estopped now to deny the right of the defendant to hold its present location. Its situation is the same, in principle, as that of a land owner who stands by and permits a railroad to locate on his land. He does not lose all of his rights, by such acquiescence, but he does lose the right to prevent such occupancy of his land and is not entitled to an injunction in-

hibiting the use thereof for railroad purposes. *Railroad Co. v. Railroad Co.,* 70 W. Va. 226.

That the second relocation made by the defendant, in the year 1911, covering a portion of the road in question, was a full and complete discharge of its duty as to that part of the road, is fully established by the evidence. As relocated and rebuilt, it was well graded and made sufficiently wide, sixteen to twenty-two feet. The engineer under whose supervision it was constructed, testifies that at no point, was the grade more than eight per cent. The railroad Y built at one end of the yard and extending up into a hollow, necessitated the running of the county road around it, along the hill side in the cove or hollow, and the declivity from the road down to the Y at one point was very steep. By way of provision against accident at that place, locust posts were set on the lower side and two-inch boards nailed to them, so as to constitute a guard or railing. The cost of the work, less than a mile in length, was more than $5,000.00. The evidence of proper construction of this portion of the road is not contradicted, and it is clear, definite and full. Notwithstanding the obvious sufficiency of this work, the county court neglected it for more than a year and allowed it to deteriorate. Small slides from the embankment were permitted to remain in it. The drainways were not cleaned out, nor any effort made to keep the surface smooth and in order. The decree complained of requires the railroad company to widen this portion of the road at one point and to improve the grade at another. There is no proof of lack of sufficient width at the point at which it is required to be widened. Though it is near the railroad excavation; it is shown to have been made wide enough and there is no proof of any subsequent railroad excavation. The grade in this part of the road, which the decree requires to be improved, was originally not over eight per cent, according to the proof, and, if it is greater now, the defect is attributable to the neglect and refusal of the county court to take charge of the road and keep it in repair.

No suggestion or intimation of any duty or obligation on the part of a railroad company, to maintain or keep in repair a new or substitute road, after it has made it, can be found in the statute. That falls within the province of the county

court, under the general statutes, and the special statute giving to railroads the right of appropriation, makes it their duty to maintain and keep in repair the crossings but not the other portions of the roads. It says a railroad company constructing its railroad across, along or upon any stream of water, water-course, street, highway, road, turn-pike or canal, it thus intersects or touches, shall restore it to its former state, or to such state as does not unnecessarily impair is' usefulness, and keep such crossing in repair. This must be taken and regarded, under a familiar rule of construction, as a full and complete expression of the legislative will respecting the matter. Impliedly it says that, after a railroad company has restored the highway to its former state, as nearly as practicable, and left its usefulness unimpaired, the county court shall take charge of it and keep it in repair to the same extent and in the same manner as if it had never been altered. As the Baltimore & Ohio Railroad Co. fully performed its duty under the statute, as to so much of the road as it altered in the year 1911, the decree, in so far as it requires additional work by the defendant upon that portion of the road, is clearly erroneous. However remiss or derelict its predecessor may have been, respecting that section of road, the defect has been remedied, and neither the statute nor the common law imposes any additional duty, by way of compensation or punishment for past injuries, occasioned by the delay.

The decree describes the portion of the road it requires to be remedied, by a plat exhibited with the bill, not by any point designated upon the ground. Though somewhat indefinite in certain respects, the plat may be a sufficient index to the parts treated as being defective. Thus framed, the decree requires relocation and reconstruction of the road from station 1, the beginning of the new road above the tunnel portal, to station No. 12, a distance of about 1397 feet. This seems to include about eight hundred feet of the section relocated and rebuilt by the defendant. No part of that section should have been included. For this conclusion, what has been said about it amply suffices. Nobody denies that it was a reasonably good road, as completed in the fall of 1911, and there is clear, definite and detailed proof that it was. The statute does not require a railroad company to provide a better road

than formerly existed, nor the best one possible under the circumstances.

The distance from the point on the hill above the tunnel to the terminus of the work done by the defendant, in 1911, may not be definitely established by the evidence, but it seems to extend from Station No. 1 to Station No. 7, covering about 600 feet. Crossing above the tunnel in a northerly direction, that part of the road turns west, descends obliquely and runs along the edge of an enormous railroad cut leading into the tunnel. Its condition is described as being very bad and no effort is made by the defendant to rebut or refute the impeaching testimony. At one place, the cut along its side is from twenty-five to thirty-five feet deep and the declivity almost perpendicular. The road on the edge of this precipice is not more than eight feet wide and the grade is very steep. The road bed, though rough and steep, must be firm and solid, since the witnesses say it was blasted out of solid rock. There is no proof that the grade is greater than was that of the old road, which also ascended the hill from about the level of the railroad, a point lower than that at which the ascent now begins. As the new road follows the hill side and is a good many feet higher than the railroad opposite the point at which the old one started up the hill, the grade is probably lighter than it formerly was.

The gravity of the palpable and obvious danger of such a location manifestly impairs the usefulness of the road. Certain injury and probable death would result from a fall from such a place, and any of a number of conceivable ordinary accidents incident to travel, would likely precipitate a team and its load, or a horse and its rider, from it. Ordinary road construction on such ground requires a road bed wider than eight feet and a substantial guard or barrier of some sort on the side next to the precipice. To be useful, a public road must be reasonably safe and numerous decisions attest the unsafeness, in a legal sense, of narrow unguarded roads on the edges of high precipitous banks, whether in close proximity to railroads or not. *Biggs* v. *Huntington*, 32 W. Va. 55; *Hill* v. *Boston*, 122 Mass. 349; *Burnham* v. *Boston*, 10 Allen, (Mass.), 290; *Niblett* v. *Nashville*, 12 Heisk., 684. Moreover, guards, when necessary, are a part of the work of necessary restoration

of a highway to a reasonably safe condition, at a railway crossing. *Evansville etc. R. Co.* v. *Allen*, 34 Ind. App. 636; *Lake Shore etc. R. Co.* v. *McIntosh*, 140 Ind. 261; *Pittsburg G. & Y. R. Co.* v. *Moses*, 2 Atl. 188; *Inhabitants of Veazie* v. *Railroad Co.*, 49 Me. 119; *Railroad Co. v. Wood*, 48 Ga. 565.

As the statute makes the old road the criterion for the new, no duty to establish, on the latter, a better grade than the former possessed, is imposed upon the railroad company. Nor is there any duty to make the substitute road wider or better than the original was. But it must be made reasonably safe, else its usefulness is unnecessarrily impaired, for if a road can be made at all, it can be made safe, and the expense of the work is no legal excuse for omission of the duty. *City of Moundsville* v. *Ohio River R. Co.*, 37 W. Va. 92.

The principles stated give the plaintiff right to have the portion of the road last above described put in better condition, unless its long delay and acquiescence have precluded such right. There is no serious contention that they have, and principles declared in *State* v. *Western Maryland Ry. Co.*, 74 W. Va. 256, *State* v. *Dry Fork R. Co.*, 50 W. Va. 235, and *Ralston* v. *Town of Weston*, 46 W. Va. 455, affirm the existence of the right notwithstanding the delay.

In so far as the decree requires improvement of portions of the road therein designated as being between stations Nos. 21 and 22 and stations Nos. 23 and 24 and relocation and reconstruction of the road from station No. 1 to station No. 12, it will be reversed, set aside and annulled; and, by way of modification thereof, a provision will be inserted in it, requiring the defendant to widen the road from the point on the hill above the tunnel portal, in the bill and proceedings mentioned, at which the substitute road constructed by the West Virginia Short Line Railroad Co., connects with the original road, to the eastern terminus of the road as relocated. and reconstructed by the Baltimore and Ohio Railroad Co., in the year 1911, to such an extent as may be necessary to allow room for a safe and substantial guard or barrier between it and the precipice along the south side thereof, and to provide and construct such a guard or barrier; and, as so modified, the decree will be affirmed and the cause remanded for

execution thereof.   As the appellant substantially prevails here, costs in this court will be decreed to it.

*Modified and affirmed, and cause remanded.*