EDWARD STEWART v. THE CINCINNATI, WABASH &
MICHIGAN RAILWAY COMPANY.

*Negligence—Defective farm crossing—Liability of railroad company.*

If a person erects insufficient or dangerous structures upon his own
lands, personally or by contract, and third persons are injured,
he will be liable for failing to observe the duty to keep his
premises safe, and in such condition as not to cause injury to
others lawfully thereon.

So *held*, where, pursuant to an agreement made with a land-
owner at the time of the execution by him of a deed of right
of way to a railroad company, the company constructed a farm
crossing, with bridges over ditches it had cut on each side of
its road-bed, to enable the land-owner to reach his land, and
after the sale of the land an employé of the new owner, while
hauling wood across one of the bridges, was injured by its
giving way, the sills being defective; and it is held that the
bridge was a structure built upon the railroad company's
land, and, by its nature and use, was a continual invitation
to those having a lawful right to cross from one side to the
other to enter upon it, and cross there, and as long as this
invitation, thus impliedly given to such persons, continued, it
was the duty of the company, independently of any contract, to
see to it that the bridge was safe for the purposes implied by
the invitation.

Error to Berrien. (O'Hara, J.) Argued January 29,
1890. Decided April 11, 1890.

Negligence case. Plaintiff brings error. Reversed. The
facts are stated in the opinion.

*Edward L. Hamilton* and *O. W. Coolidge*, for appellant.

*L. C. Fyfe, C. E. Cowgill*, and *George S. Clapp*, for
defendant.

[The points of counsel are stated in the opinion.—
REPORTER.]

CHAMPLIN, C. J. On May 5, 1888, the plaintiff was injured while hauling with a team a load of wood over a bridge on a farm crossing which crosses defendant's railway. In constructing the railroad, ditches had been cut on each side of the railroad bed, from 10 to 14 feet in width; and, in constructing the farm crossing, bridges had been built across these ditches. The bridges were from four to five feet above the bottom of the ditches.

On September 30, 1881, Azariah Q. Kent was the owner of the farm known later as the "Green Farm," which consisted of about 200 acres of land, situated on both sides of the section line running east and west between sections 5 and 8, upon which section line was a highway, and the only one accessible from the land. Eighty acres lay south of this highway, used as a wood lot.

The Elkhart, Niles & Lake Michigan Railroad Company had surveyed a route for its railroad across this 80-acre lot, a few rods south of the highway, and running nearly parallel thereto. On September 30, 1881, Kent, by his attorney in fact, Asher Warner, in consideration of $100, as expressed in the deed, conveyed to the Elkhart, Niles & Lake Michigan Railroad Company a right of way 66 feet wide across the 80-acre lot, including the right to take therefrom material for the construction and repair of said railroad, and the right to conduct water by aqueducts, and the right to make proper drains.

On the same day the railroad company gave to Warner the following agreement, viz.:

"NILES, MICH., Sept. 30, 1881.

"Whereas, Asher Warner has this day sold and conveyed to the Elkhart, Niles & Lake Michigan Railroad Company, the right of way, and for other purposes, 66 feet in width, across the west half of the north-west quarter

of section eight, in township eight south, range sixteen west, in Milton township, Cass county, Michigan:

"Now therefore, the said railroad company hereby agrees that the timber now standing on said right of way shall be laid off the railroad bed, and onto the adjoining land of said Warner, on either side of said railroad bed, as may be most convenient for the company, and agrees, further, to provide for said Warner a suitable crossing over their said road-bed onto his land.

"THE ELKART, NILES & LAKE MICHIGAN RAILROAD "COMPANY.          By F. M. GRAY, President.
                    "GEO. F. EDWARDS, Secretary."

These two papers, which were executed at the same time, must be construed together. Asher Warner was not the owner of the land, but was attorney in fact of Kent, the owner, and had the possession of the land. The paper shows that the name of the attorney in fact was inserted in place of Kent, the vendor of the right of way, and the owner of the land, and will be construed the same as if Kent's name was inserted in the place of Warner's.

The railroad company went on under the above agreement, and constructed its road-bed, and, in doing so, made the ditches before stated. It also constructed a farm crossing, and built bridges across the ditches. These bridges were composed of two black ash stringers, which had been cut upon the right of way, and laid six months or a year, and "had become soured in the sap, and lost much of their elasticity and strength," and the stringers were covered with good pine plank.

It would appear that these bridges were built in 1882. Warner knew of their material, and manner of construction, and used them for the purpose of hauling saw-logs, wood, etc., over them; and it is not claimed that he found any fault with their material or mode of construction, or that they were not sufficient for the purpose, so long as Kent owned the farm.

On March 15, 1884, Kent, by his attorney, Warner, sold the land to Green, who employed the plaintiff to haul wood, at the time above stated; and, in driving over the north bridge, riding on a load of wood, the sills of the bridge gave way, and precipitated him into the ditch, by which he was injured.

It further appears that in May, 1882, the Elkhart, Niles & Lake Michigan Railroad Company consolidated with the Cincinnati, Wabash & Michigan Railway Company, and that the latter named company succeeded to all the rights and properties of the former, under the statute in such case made and provided.

The circuit judge held that the plaintiff had no cause of action, and directed a verdict for defendant.

Counsel for plaintiff contend—

"That the railroad company was bound to construct and maintain a proper crossing—
"1. At common law, without any agreement or statute.
"2. In pursuance of the agreement.
"3. By statute."

They claim that, in absence of any contract or statute, it is well settled that the right of way across an intervening piece of land, in a case like this, where the part cut off was not otherwise accessible, was reserved at common law, and that the owner of land who had granted the right of way to a railroad company by deed must be held entitled to such crossings over the railroad track and right of way as are reasonably necessary for the use of the premises.

There is no doubt, upon the general proposition, but in such cases the vendor would be obliged to construct and keep in repair the way reserved by necessity; and, in such case, without an agreement, and without statute, the company would not be obliged to construct his right of way across ditches which it had made in order either

to construct or drain its road-bed. The grant to the company for the purpose of constructing its road carried with it the right to do all things requisite or incidental to effectuate the purpose of the grant. But in this case there is express mention of the right to construct aque_ducts and drains.

Upon the second point, the question is whether the agreement "to provide for said Warner a suitable crossing over their said road-bed onto his land" bound the railroad company to build and *maintain* good and sufficient bridges across its ditches, and whether such covenant ran with the land.

These questions were very fully argued by counsel, but I do not see how they are material to the issue. If it is claimed that the tort alleged by which plaintiff was injured arose out of contract, there was no privity of contract between the railroad company and this plaintiff, and hence the plaintiff had no right of action for such tort. *Tollit v. Sherstone*, 5 Mees. & W. 289; *Losee v. Clute*, 51 N. Y. 494; *Bank v. Ward*, 100 U. S. 204, 205; *Longmeid v. Holliday*, 6 Exch. 761; *King v. Railroad Co.*, 66 N. Y. 181, 72 Id. 607.

With reference to structures upon one's own land, a different rule prevails. If a person erects insufficient or dangerous structures upon his own lands, no matter whether he does so personally or by contract, and third persons are injured, the owner will be liable for failing to observe the duty to keep his premises safe, and in such condition as not to cause injury to others lawfully thereon.

I do not think there is any liability under the statute, for two reasons:

1. The crossing in question was not constructed under the statute, but under a contract.
2. The statute only requires farm crossings to be put

in upon the application of the owners of land lying upon both sides of the right of way. No request was ever made for a farm crossing under any statute of this State.

The conceded facts are that the crossing was put in under the written agreement, but this agreement was ruled out by the court on the ground, as we may suppose, that no neglect of duty owing by the defendant to the plaintiff had been or could be shown. The land upon which the bridge was constructed was, to all intents and purposes, the defendant's. It was entitled to its sole and exclusive use, possession, and enjoyment, except as either it or the statute permitted others to pass upon or occupy the same. The railroad company built the bridge, and was the owner of it. It furnished and owned the stringers and the plank. It owned the plank between the rails. It owned the gates, if gates there were, opening upon this crossing. It was built upon an agreement to provide a suitable crossing over its road-bed, so that the owner or those in possession of the adjoining land could cross from one side to the other. It was a structure built upon its own land, and, by its nature and use, was a continual invitation to those lawfully having a right to cross from one side to the other at that place to enter upon it, and cross there. And so long as this invitation, thus impliedly given to such persons, continued, it was the duty of the defendant, independently of any contract, to see to it that it was safe for the purposes implied by the invitation.

The court erred in excluding the agreement, and in taking the case from the jury. The judgment must be reversed, with costs, and a new trial is ordered.

MORSE and GRANT, JJ., concurred. LONG, J., did not sit.