# CHARLESTON.

## THE BRISCOE HOME TRUSTEES v. OHIO RIVER RAILROAD COMPANY.

### Submitted April 25, 1916.    Decided June 1, 1916.

1. JUDGMENT—*Conclusion—Matters Concluded.*

    A former decree adjudging plaintiff not entitled to specific execution of certain covenants contained in his deed to a railway company for a right of way, because only nominally damaged by breaches thereof, constitutes a complete bar and estoppel to a second suit for the same relief, where the facts remain the same or substantially the same as in the former suit. (p. 506).

2. RAILROADS—*Right of Way—Deeds—Construction.*

    Where in such grant of a right of way the deed or contract contains a covenant on the part of the railway company to make road or farm crossings over the railway tracks, and no right is reserved or granted to the land owner to enter and build and maintain such crossings, owing to the character thereof and the continuing necessity therefor, a covenant for permanent maintenance thereof by the railway company is implied, a covenant which runs with the land. (p. 509).

3. SAME—*Rights of Way—"Railroad Crossing."*

    The words "road crossing" contained in such covenant, construed with reference to the character of railway crossings and the

facts and circumstances surrounding the making of the deed, and what was subsequently done by the railway company thereunder, as including the bridge over a stream of water, the course of which through the land of the grantor, by subsequent agreement and at the time of the building of the railroad, was changed by the railway company so as to run parallel to and partly on the right of way and partly on the land of the grantor, and all other approaches to the crossing over and on both sides of the tracks. (p. 511).

4. SAME—*Right of Way—Change of Water Course.*

Where a railway company by agreement with the adjoining land owner and for adequate consideration paid has rightfully turned the course of a stream of water, and in the absence of a contract or covenant to do so, it is not liable thereafter to observe the action of the water, and so to protect the banks or take other timely measures as will prevent encroachment of it on the adjoining land. (p. 513).

5. SAME.

Where a land owner has granted to a railway company a right of way through his land and for a consideration paid has also given it the right to so change the course of a stream of water through his land, it is his duty to do what is necessary to protect the bank of said stream on his land against erosion by the waters therein, and if his failure to do so results in damages to his land, he cannot recover such damages from the railway company. (p. 514).

6. SAME—*Right of Way—Agreements.*

Where the bridge originally built by the railway company across such water course has decayed or been washed away by high waters, and by reason of the negligence of the land owner to protect the bank on his land the channel of the stream has been greatly deepened and widened, the whole burden of rebuilding such bridge and approaches thereto over such stream will not be enjoined upon the railway company, but it may be required to join with the land owner in rebuilding such bridge and to pay or contribute thereto such sum as would have been required to build and maintain such crossing and bridge if the conditions were the same as when it built the original crossing and bridge over the water course and right of way. (p. 515).

Appeal from Circuit Court, Wood County.

Suit by the Briscoe Home Trustees against the Ohio River Railroad Company and others. From decree for plaintiff, defendants appeal.

*Reversed, modified, and decree entered.*

*J. W. Vandervort* and *Van Winkle & Ambler,* for appellants.

*McCluer & McCluer,* for appellee.

Miller, Judge:

Plaintiff, devisee of Abraham Johnson, by its bill in the present suit predicates its right to the relief prayed for upon certain covenants on the part of the Ohio River Railroad Company, contained in the deed or contract from Johnson to the railway company, of February 28, 1883, the same on which Johnson, in a former suit instituted by him against said company, in January, 1904, sought similar relief, and in which cause this court, on December 18, 1906, modifying and affirming the decree of the circuit court, denied him any relief. The only substantial difference in the situation of the parties, or in the status of the facts, is that the Ohio River Railroad Company has since conveyed its property to the Baltimore & Ohio Railroad Company, and the bridge over Miller's Run, built by Johnson in lieu of the one originally built by the railway company, and which had decayed, and been washed away by high waters, has also decayed and been washed away, and the rebuilding whereof is sought by the present bill to be enjoined upon the defendant companies. The facts existing at the date of the decree appealed from in said former suit, and presented by the record in this case, are substantially as recited in the opinion of the court prepared by Judge Poffenbarger, and reported in 61 W .Va. 141.

The covenants of the railroad company pleaded and relied on in the former bill and in the bill in this case are as follows: (1) To build cattle stops, between the fields of said Johnson, as well as between the lands of Johnson and the lands of adjoining owners. (2) To make five good road crossings over said railroad track on said Johnson lands at such points as said Johnson may designate. (3) To construct, provide and maintain one good roadway under said railroad at some point on the line at or about the stone quarry on the lands of said Johnson, to be designated by said Johnson. (4) To construct and maintain a sufficient outlet to the spring near the stone quarry. (5) To make and maintain a way under said rail-

road near the lower end of the stone quarry sufficient for a chute or other purpose for the use by the said Johnson or his assigns. (6) To build, maintain and keep in repair one line of fence on the line of said road and right of way through the lands of said Johnson.

It was in consideration of the sum of five hundred dollars paid, the advantages to result to the grantor from the building of said railroad, and the covenants in said deed, that Johnson thereby agreed to grant and convey by proper deed to the railroad company "the full and free right of way of the width of fifty feet, with necessary cuts and fills for said road * * * in and upon and through" his "lands * * * * as surveyed and laid down by Engineer Wharton"; and also to "release said company all damages and claims for damages which may be in any way sustained by him, by reason of the construction or building of said road * * * through said lands, or on account of temporary use and occupancy" thereof "by the said Company, its agents or servants or incidental damages" thereto "during the construction of said railroad."

The bill in the former suit, as does that in the present case, alleges breaches by defendant of all said covenants, and sought enforcement of all of them; and in addition to breaches of these covenants both the former and the present bill alleges that the Ohio River Railroad Company, in the construction of its said road, changed the course of said Miller's Run, as it ran through said farm, by cutting a ditch about three feet deep and eight feet wide, sufficient to carry the water therein, along and upon the right of way on the west side of the road bed from the point where the run passes under the road, down to a point where it flows towards the river, but that in doing so "left the same wholly unprotected against its liability to wash out deeper and wider, and so destroy a large surface of good and valuable land, beyond and altogether off of the company's said right of way", and that defendants have not protected the west side of said stream as they protected the railroad side thereof. It is further charged that the covenants set forth in said contract of 1883, are continuing covenants, and that so long as said right of way is occupied and used

for railroad purposes defendants are bound to keep and perform all of the conditions and agreements contained in said contract, and that as the necessities of the farm require, and proper use thereof renders it necessary, to maintain all cattle stops, crossings, undercrossings, spring outlet, and fences, as stipulated in said agreement, and to restore and rebuild the same when necessary, and to confine and limit its construction to its original right of way and not to encroach upon the land of plaintiff unnecessarily. And in connection with the allegation of defendants' alleged duty to protect the west bank of said Miller's Run from washing, it is also alleged that such washing "might easily have been prevented if said company had done its duty and protected the land owner's side of the ditch as it did its own, as it was often requested to do."

The answer of defendants pleads in estoppel and bar of the present suit the decree of the circuit court, modified and affirmed here, in the said former suit, and in addition alleges, as in their answer to the bill in said former suit, that said contract contains no covenant on their part to perpetually maintain railroad crossings, or bridges, nor any covenant to protect the west, or the land owner's side or bank of said run; that the change in the course of said stream and as it now runs through said land was made at the time of the construction of said railroad, pursuant to a verbal agreement made between the Ohio River Railroad Company, through its representative, C. H. Shattuck, and for a full and adequate consideration paid said Johnson, and that there was no contract or agreement on their part to protect the bank on Johnson's side of said run, and that the negligence in failing to protect the same was that of Johnson or his successor, and not of defendants, and that as the bill alleges the washing of the bank could easily have been prevented, defendants are not liable for consequential damages resulting from such neglect.

What was decided by the decree in the former suit, as modified here, was not that equity was without jurisdiction to specifically enforce the covenants in the deed or contract of 1883, indeed the decision was that equity did have such jurisdiction; but that the court had discretionary power to deny

specific execution when to do so would amount to vindication of mere naked legal rights, remediable at law, and that as by the bill and evidence it did not appear that if built any use would be made of the cattle guards, chute for a stone quarry, or outlet for the spring, plaintiff should be remitted to his action at law for a breach of those covenants if broken; and furthermore that as plaintiff had not designated, according to the covenant in the contract, any place for road crossings, as therein provided, no action had accrued against the defendant company, or would accrue, until such designation had been made, and that as to the one particular crossing designated, where Johnson had built the bridge, and was only demanding of the defendant company the cost of the construction thereof, a purely legal demand, he could not maintain his bill to enforce specific performance of that or the other covenants, having no immediate connection with such demand, or the matters out of which they arose.  And with respect to this bridge and the other relief prayed for the opinion says: ''The demands for compensation for replacing the bridge and for damages for the loss of land, occasioned by the washing of Miller's Run, are purely legal and could not be enforced here except as incidents to the granting of some equitable relief.  Whether the enforcement of them could be had as incidents to the enforcements of covenants in the contract with which they are in no way connected it is unnecessary to decide.  The crossing at that point, since the replacement of the bridge, is, so far as the evidence shows, reasonably good and sufficient for the purposes for which it was intended, as are all the other crossings, which seem to be in use.  As it is clear, therefore, that the plaintiff has wholly failed to make a case for equitable relief in respect to any of the covenants of the contract, it is not perceived how the Court can give him any relief as to these legal demands.  For them, he may resort to his action at law as well as for damages for breaches of any covenants in the contract, which he may be able to establish.'' As this decree assumed the form of an absolute adjudication of all the matters set forth in the bill, it was so modified, on affirmance, as to insert a clause saving to plaintiff the right

to prosecute any other proceeding, whether in law or in equity, which he might deem advisable.

The present bill presents the same question as the former bill, except as to the new conditions at the bridge, which was then intact, but has since been washed away, and such changes as have taken place in the mean time by the continued washing of the banks of Miller's Run, and as the facts with respect to the other covenants sought to be enforced are substantially the same as at the time of the former decree, when relief as to them was denied, the former decree is an adjudication, binding the plaintiff, that no relief in equity can be granted with respect to them, and to that extent the plea of former adjudication should be sustained. Moreover, this was manifestly the view of plaintiff and its counsel, as well as of the circuit court, for the notice alleged to have been given to the railway company to rebuild the crossing was limited to the crossing at which the bridge was built, originally by the railroad company, afterwards by Johnson himself, and the only relief decreed by the court, requires defendants "to forthwith erect and construct a good and sufficient bridge and crossing on the farm of plaintiff, * * * * at a point opposite the late residence of the said Abram Johnson, * * * * where the company formerly constructed and for a time maintained a bridge and crossing, with good and sufficient approaches thereto, in order that plaintiff may haul its products from that portion of its farm lying between the right of way of the defendant companies and the Ohio River." And the court being of opinion that plaintiff was entitled to recover of defendants any damages which it may have sustained by reason of defendants' failure to construct said bridge and crossing, from April 20, 1911, the date of service of said notice, to February 1st, 1913, the date of the institution of this suit, deducting however from the date of said notice time sufficient to have enabled defendants to comply therewith; and was also entitled to recover such damages as it may have sustained within five years prior to the date of the institution of this suit, by reason of defendants' action in changing the course of the stream known as Miller's Run, but was not entitled to recover any damages thereby sustained

prior to that time, referred the cause to a commissioner to ascertain the amount of such damages.

Is this decree erroneous in whole or in part upon any of the grounds relied upon? Certainly it goes to the limits of any relief to which plaintiff, under the pleadings and proofs, was entitled, and as no cross-errors have been assigned by plaintiff, we must assume that it has acquiesced in the character and extent of the relief granted. The only covenant pleaded and relied upon to justify the decree enjoining upon defendants the building and construction of the bridge and crossing is the covenant referred to, "to make five good road crossings over said railroad track on said Johnson lands at such points as said Johnson may designate." One contention of the defendants respecting this covenant is, that if required to build the bridge over Miller's Run, as changed pursuant to the verbal agreement, made subsequently to the deed or contract, the covenant was fully performed by the construction of the original bridge, and that if it covers the building of a bridge it does not require maintenance by the railway companies. They argue also that as the third, fourth, fifth, and sixth covenants, in terms, require not only building, construction, but also maintenance, and the first covenant respecting cattle stops, and the second respecting road crossings, do not in terms require maintenance thereof, the parties manifestly intended to limit the first and second covenants to the construction of cattle stops and roads in the first instance. We do not think the maxim *expressio unius est exclusio alterius,* relied on, can have much weight in the consideration of this question. The nature of the structures which the contract provides shall be constructed and maintained are not necessarily of the permanent character required at a railway crossing, wherefore the importance of providing therefor in the contract. Where farm lands are divided by railway tracks, and the right has not been granted or reserved to the owner of the land to enter upon the right of way to build and maintain such necessary crossing, without which he would be a trespasser, a covenant on the part of the railway company to make such crossings necessarily implies a covenant to perpetually maintain the same. We judicially know that railway

78 W. Va.

companies do not ordinarily permit persons to go upon their rights of way to build or maintain any kind of structures thereon, because of the possibility of interference with traffic, and the danger to life and property intrusted to their care, which might result therefrom. These considerations repel any implication of such right reserved in the grantor of a right of way, when the covenant in the deed is that the railway company shall construct such crossings. This rule or principle we think well established by the authorities. Baldwin on American Railroad Law, 146, citing *Stewart* v. *Cincinnati, Wabash & Michigan Ry. Co.*, 80 Mich. 166, 44 N. W. 1116, 17 L. R. A. 539. See, also, *Clouse* v. *Canada Southern Ry. Co.*, 4 Ont. Rep. 28; *C. K. & W. R. R. Co.* v. *Cosper*, 42 Kans. 561; Thornton on Railroad Fences and Private Crossings, section 263; *Louisville & N. R. Co.* v. *Brooks*, (Ky.) 77 S. W. 693; *Baltimore & O. S. W. R. Co.* v. *Brubaker*, (Ill.) 75 N. E. 523.

The law is well settled with respect to railways crossing public roads, that they must erect and perpetually maintain all such structures, and keep up all repairs made necessary at such crossings. *Farley* v. *C., R. I. & P. R. Co.*, 42 Iowa 234; *Moggy* v. *Canadian Pacific Railway*, 3 Manitoba L. R. 209; *People* v. *N. Y. C. and H. R. R. Co.*, 74 N. Y. 302; *G., C. & S. F. Ry. Co.* v. *Greenlee*, 62 Tex. 344; *C., H. & I. R. Co.* v. *Claire*, 6 Ind. App. 390; *Town of Roxbury* v. *Central Vt. R. Co.*, 60 Vt. 121, 138, 14 Atl. 92; 3 Rapalje & Mack's Digest of Railway Law, 433, and cases cited. And this duty, says Wood on Railroads, (Minor's Ed. 1894), 1169, ''embraces the duty to construct and maintain not only the actual crossing, but its approaches, even where they extend beyond the limits of its right of way.'' See, also, *White* v. *Inhabitants of Quincy*, 97 Mass. 430. And our statute, section 14, chapter 42, Barnes' West Virginia Code, 1916, page 498, serial section 1713, Code 1913, relating to condemnation proceedings, provides, that ''where such land has been cleared and fenced, said railroad company shall construct and forever maintain suitable farm crossings, cattle guards, and fences on both sides of the land thus taken.''

When, therefore, the parties to the contract involved here

contracted for farm crossings, and provided that the railroad company should make these crossings, we think it fair to assume, that they impliedly contracted not only for the building, but for the maintenance thereof also by the railroad company, the same as the statute, where the right of way is taken by condemnation, requires at the hands of the railway company.

The next question presented is, what is included in the term "farm crossing"? Is it limited by the contract to the right of way of the railway company, or, as in the case of railroads crossing public roads, controlled by statute, or by the specific terms of the contract, does it extend to all necessary approaches over and beyond the right of way, and so as to include bridges over streams, partially or wholly beyond the right of way taken? This is one of the most important questions presented for decision. The contract, it is important to observe, does not, in terms, require the railroad company to build and maintain a bridge over Miller's Run. But it is contended that a covenant to build and maintain a bridge is implied, and moreover, that the parties by practical construction, and particularly the railway company, so construed the contract, when it originally built the bridge over Miller's Run, as a part of the farm crossing, designated at that point. As applied to the intersection of a common highway with a railroad, and as used in statutes, the term "crossing" has been held to embrace the entire structure, including the approaches, although a part of the structure may be outside the lines of the railroad's land, or the places where the roads actually cross each other. 12 Cyc. 983, and cases cited. The cases cited include some of those already cited herein. See, also, *Birlew* v. *St. Louis & S. F. R. Co.*, (St. Louis Court of Appeals), 79 S. W. 490, especially cited and relied on by the learned judge of the circuit court, in addition to the cases cited in Cyc., for the reason that it involves a farm crossing, not a public road crossing, built over a ditch excavated by the railway company in building its line. It is true this case was turned upon the construction of the Missouri statute, the right of way having been acquired by condemnation, and not, as in this case, by contract. We perceive, as already indicated,

that the parties to such a contract may specifically provide for such crossings and limit and control their respective duties in relation thereto by the terms thereof. Thornton on Railroad Fences and Private Crossings, sections 263-265; *Williams* v. *Clark,* 140 Mass. 238, 5 N. E. 802; *Baltimore & Ohio S. W. R. Co.* v. *Brubaker, supra,* points 6 and 7 of the syllabus. In this case, however, the contract simply provides for the making or building of farm crossings, with the covenant implied to maintain the same in the manner and to the extent which must have been contemplated by the parties, owing to the conditions then existing, or changes that might be reasonably contemplated therein. But when we read into a contract an implied covenant we are limited to such reasonable terms as the parties, if the matter had been particularly called to their attention, would likely have provided. In the case at bar we think it clearly established by the evidence that the railroad company, in constructing its railroad through plaintiff's lands, and in changing the course of Miller's Run, construed its contract to require of it the building of the bridge over the run. That the railway companies now deny their obligation to maintain the bridge is immaterial, so long as perpetual maintenance thereof is necessary for the use and convenience of the land owner.

If the conditions were now or at the time of the decree appealed from such as they were at the time the bridge was originally built across Miller's Run, the foregoing conclusion would be decisive of the case before us. Originally this run, as re-located, was but three or four feet deep, and eight feet from bank to bank, substantially as before the railroad entered and made the change; but at the time of the institution of the former suit, and at the time of the filing of the present bill, conditions had greatly changed, concededly due to the negligence, either of the railroad company, or of Johnson, so that when Johnson built the bridge to replace the one built by the railroad company he was obliged to construct one some seventy feet long over the widened and deepened channel, due to the action of flood waters in the run. If these new conditions were the result of the negligence of the railroad companies, as the bill alleges, defendants might upon equitable

principles be required to rebuild the bridge, but if due to the negligence of plaintiff, or of Johnson, under whom it claims, quite a different question is presented. Plaintiff is in a court of equity, and will be required to do equity. The evidence, we think, shows that Miller's Run, as changed under the verbal contract, was located for the most part upon the plaintiff's land outside the original right of way, and certainly the west bank of the stream at the point opposite the bridge was upon the plaintiff's lands. The evidence also shows that the soil was a soft loam, and readily subject to erosion by floods frequently occurring in the stream, and that the defendant companies had been obliged to protect the bank on their side by slag and other material, and by the planting of trees and willows, but that Johnson had wholly neglected to protect the bank on his side, resulting in the washing away of a portion of his land, and the bridge originally built by the railway company.

Were defendants bound, under their contract, to go upon plaintiff's land and protect the bank on that side of this run? In Angell on Water Courses, (7th ed.) 620, it is laid down upon the authority of decided cases, that where a railroad company has rightfully and properly turned a stream of water, either by virtue of its charter, or by grant of land, for the purpose of enabling it to do so, it is not liable thereafter to observe the action of the water, and so to protect the banks or take other timely measures as will prevent the encroachment of it on other neighboring land. The case of *C. K. & W. R. R. Co. v. Cosper, supra,* was a condemnation proceeding, where the railroad company had cut a ditch partly on the right of way and partly on the land of Cosper, for the purpose of turning the water, under circumstances similar to those in the case at bar, and one of the questions was, what damages, resulting from the building of the ditch, could be included by the jury in their verdict, and the court approved an instruction which told the jury, that no claim for damages could be founded upon the negligent and improper construction or apprehended negligent and improper operation of the railroad, or for digging ditches upon the plaintiff's land outside of the right of way; that for all such, actions other than condemnation,

for the recovery of damages thereon would lie; and that it was only such damages as necessarily result from or which may fairly and reasonably be presumed to result from the construction and operation of the road in a legal and proper manner that could be taken into account by the jury. See, also, *Sweeney* v. *Montana Central Ry. Co.,* (Mont.) 47 Pac. 791. This case was an action for damages for cutting a new channel for a stream through plaintiff's premises, not by right given by statute or by contract, although one of the defenses was that it was done with the consent of the owner. In the case at bar it is alleged in the answer and fully proven that the change in the course of Miller's Run was made not merely by consent, but by agreement, for a full and adequate consideration paid. It is not alleged nor proven that the washing of the bank on the plaintiff's side of the run was in any way due to the negligent construction of the railroad or the digging of the ditch. Indeed we think it is conceded that the work of building the road and changing the course of the stream on plaintiff's land was done in a skillful and proper manner, and the only negligent act charged or relied upon is that the defendant failed, as it might easily have done, to protect the bank on plaintiff's side of the stream, and it is significant to again note that the bill in charging the alleged duty of the railway company with respect to the covenants pleaded alleges that it was its duty to limit its construction to its original right of way and not to encroach upon the land of plaintiff unnecessarily. And with respect to the building of the railroad it must be borne in mind that the grant of the right of way was not only a way of the width of fifty feet, but also ''with necessary cuts and fills'' through said land, and release by the grantor of all damages or claims for damages which might in any way be sustained by Johnson by the building or construction of said road. We do not think the contract properly construed required of the railway company, or permitted it to go upon Johnson's land to protect the bank on his side of Miller's Run. Without such right, or by invitation of Johnson or the plaintiff, the railway company would be a trespasser in doing so.

Were the railway companies negligent then in not protect-

ing the western bank of this stream? We cannot so hold. In our opinion it was the negligence of the plaintiff, or of Johnson, under whom it claims. The bill alleges that the damages could easily have been prevented, and it was the duty of Johnson or the plaintiff to have done so, if for no other reason than to minimise the damages, for one so situated may not sit idly by, and by neglect sustain greater damages, and then seek recovery thereof from the other party who may be finally liable for damages properly recoverable under the contract. 8 R. C. L. 442, section 14; *Sweeney* v. *Montana Central Ry. Co., supra; Huntington Easy Payment Co.* v. *Parsons,* 62 W. Va. 26, 9 L. R. A. (N. S.) 1130; 3 Farnham on Waters and Water Rights, section 898, p. 2630. When the railroad company bought and paid for the right to change the course of the stream through plaintiff's land, it must be presumed that the parties contemplated such consequential damages to the bed and bank of the stream as might reasonably have been expected, and that these damages were included in the price paid for the right, skillfully executed. It is suggested that some of the damage may have resulted from the fill made by the railroad company on its right of way, and by the planting of the trees and willows to protect its bank. This is denied, and the evidence is clear that the railroad company has done nothing except what was necessary to protect its track and the lives of the passengers and property entrusted to its care; and the evidence satisfies us beyond doubt that it in no way encroached upon plaintiff's land in doing so. What it has done on its right of way it was clearly given the right to do by the very terms of the grant.

The next question to be disposed of is, what relief should be granted with respect to the restoration of the bridge and crossing. In *Wetzel County Court* v. *B. & O. R. R. Co.,* 77 W. Va. 538, 87 S. E. 884, this court held that clause 6, section 50, chapter 54, serial section 2949, Code 1913, "does not impose duty upon a railroad company, crossing or appropriating a public road, to make a better road than the one so crossed or appropriated, nor to maintain a sufficient substitute road after it has been constructed." If, as has been said, conditions were the same now as when the crossing was

originally built by the railroad company, or substantially so, plaintiff would clearly have the right to enjoin upon the defendants the building and maintenance of the crossing and bridge; but is it proper to impose upon the defendants the whole burden of building a bridge and crossing to meet the new conditions, the result of Johnson's or plaintiff's negligence, and for which defendants are not legally responsible? Clearly it cannot be assumed that the contract contained any such implied covenant on the part of the railroad company, and it would be inequitable to do so.

But we are of opinion that equity does require that the mandatory injunction in the decree appealed from should be so modified and limited as to require defendants to join with the plaintiff, if the plaintiff shall so elect, in the construction of a crossing and bridge over said run, and to bear such part or proportion of the expense thereof, and in the perpetual maintenance thereof, as would have been imposed upon it if the conditions had remained as at the time of the building and constructing of the original crossing and bridge by it, the rest of said expense of building and maintaining said crossing and bridge to be borne by the plaintiff, its successors or assigns.

And on the question of damages we are further of opinion that the plaintiff should be limited to such damages as it has sustained by the failure or neglect of defendants, from the time it shall give notice to defendants of its election to accept the provisions of the decree to be entered herein, and a reasonable time allowed for the construction of such bridge and railroad crossing, as the plaintiff may sustain from default on the part of the defendants, and that plaintiff is entitled to no other damages, and that the decree of the circuit court should also be modified in accordance therewith.

Our conclusion, therefore, is to reverse and modify the decree, and to enter such decree here as indicated in the foregoing opinion.

*Reversed, modified, and decree entered.*